ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

DONOVAN M. McKENDRICK (CABN 284339)
Special Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7164
    FAX: (415) 436-7234
    Donovan.Mckendrick@usdoj.gov

JEFFREY L. WILSON
Law Clerk

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  v.<br><br>KEYBIN ELOY RODRIGUEZ,<br><br>    Defendant. | Case No. 3:24-CR-00423 SI<br><br>**UNITED STATES' SENTENCING MEMORANDUM AND MOTION FOR JOINT CHANGE OF PLEA AND SENTENCING**<br><br>Date:  August 16, 2024<br>Time:  11:00 a.m.<br>Court:  Hon. Susan Illston |

## I.    OVERVIEW

The United States and the defendant, Keybin Eloy Rodriguez, jointly request that the Court accept the proposed plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(C). This case is part of the United States Attorney's Office's efforts to disrupt the fentanyl and methamphetamine open-air drug market that exists in San Francisco's Tenderloin District (the Tenderloin) through a combination of enforcement and dispositions that prevent drug traffickers from returning to the Tenderloin. These efforts will occasionally take the form, as here, of prosecution of street-level dealing where the defendant has a limited criminal history, leading the United States to seek expedited

prosecution, obtain a federal conviction, and enforce a strict three-year stay-away order that immediately excludes convicted drug traffickers from returning to the Tenderloin and thus dissuades them from engaging in further drug trafficking.

Further, in this case, Keybin Eloy Rodriguez is in custody and when sentenced will be released from the Marshal into ICE custody. He will be subject to a strict stay away order and if he were to violate it, he will be subject to a Form 12 violation in addition to any other new conduct. Finally, this result is appropriate for a street dealer who ordinarily would not be charged federally even though he is a recidivist.

The United States accordingly recommends a below-Guidelines sentence of time-served plus one day, with an expedited sentencing and a supervised release that includes a geographical restriction from the Tenderloin. The United States submits that this result meets the requirements of Section 3553(a) for this defendant at this time in this case.

## II.    MOTION FOR JOINT CHANGE OF PLEA AND SENTENCING

To advance the goal of this accelerated disposition, the parties jointly move the Court to proceed to sentencing without a presentence investigation report during the same hearing as the defendant's change of plea, or as shortly thereafter as is practicable. This will achieve the expedited proceeding contemplated by both parties. The Court may sentence without a presentence investigation report if it "finds that the information in the record enables it to meaningfully exercise its sentencing authority under 18 U.S.C. § 3553" and "explains its finding on the record." Fed. R. Crim. Proc. 32(c)(1)(A)(ii); *see also* Fed. R. Crim. P. 32(b)(1), U.S.S.G. §6A1.1, Crim. Local Rule 32-1(b). The government respectfully submits that the record here—the Criminal Complaint, the Plea Agreement, and the parties' sentencing memoranda, all detailing the defendant's offense conduct and other factors relevant under § 3553—enable the Court to meaningfully exercise its sentencing authority under § 3553 and proceed to sentencing without the need for a presentence investigation report. The parties request that the Court explain its findings and the sufficiency of the record at time of sentence.

///

///

U.S. SENTENCING MEMO RE: KEYBIN RODRIGUEZ
3:24-CR-00423 SI

III.    **APPLICABLE GUIDELINES RANGE AND CRIMINAL HISTORY CATEGORY**

The government calculates the following Guidelines range:

a.    Base Offense Level, U.S.S.G. §2D1.1(c)(12):                                        16
      Defendant possessed 38.4 KG of Converted Drug Weight[1]

b.    Acceptance of Responsibility:                                                     - 3

c.    Adjusted Offense Level:                                                            13

The government calculates a Criminal History Category of I (1 point).[2]

An Adjusted Offense Level of 13 and a Criminal History Category of I results in a Guidelines range of 12-18 months.

The government also seeks a three-year term of supervised release (as required by statute) and imposition of the $100 mandatory special assessment.

IV.    **SENTENCING RECOMMENDATION**

Consistent with the Plea Agreement in this case, the parties jointly request a sentence of time served plus one day and a three-year term of supervised release that includes a special condition that the defendant may not re-enter the Tenderloin during the period of supervised release.  This stay-away condition is a critical component of the plea bargain because it prevents the defendant from returning to the Tenderloin, from where the defendant's conviction for drug trafficking arises.

A.    **Section 3553(a) Factors**

1.    **Nature and circumstances of the offense; history and characteristics of defendant**

The defendant, Keybin Eloy Rodriguez, is 30 years old and a citizen of Honduras.  According to the Department of Homeland Security, Rodriguez has four prior deportations – in 2014, 2018, 2019, and 2020 – for being an inadmissible alien under 8 U.S.C. § 1182.

Criminal records indicate that Rodriguez has one prior conviction in the United States, though he

---

[1] *See* U.S.S.G. §2D1.1(c) n.8(D) (Drug Conversion Tables).

[2] The government has reviewed and produced in discovery the criminal history report for the defendant available through the National Crime Information Center, a criminal records database.  That report reflects that the defendant has one prior conviction in which he pleaded guilty to three counts of violating 21 U.S.C. § 841(a)(1) and (b)(1)(C). *See* CR-20-00053-001 EMC, Dkt. 19 (Judgment).

1   has been arrested on nine other occasions by California, Utah, and federal law enforcement authorities.

2   Regarding the prior conviction, on February 18, 2020, Rodriguez was arrested by the Drug Enforcement

3   Administration ("DEA") in San Francisco, California and charged with three counts of unlawful intent to

4   sell, distribute, or dispense narcotics in violation of 21 U.S.C. §841(a)(1), (b)(1)(C). Specifically: (1) 21

5   U.S.C. §§ 841(a)(1) and 841(b)(1)(C), Distribution of Methamphetamine, (2) 21 U.S.C. §§ 841(a)(1) and

6   841(b)(1)(C): Possession with Intent to Distribute Cocaine Base, and (3) 21 U.S.C. §§ 841(a)(1) and

7   841(b)(1)(C): Possession with Intent to Distribute Heroin. In this case, on April 14, 2020, Rodriguez

8   signed a plea agreement with the U.S. Attorney's Office, pleading guilty to all three counts described

9   above, and was sentenced in the District Court for Northern District of California, by U.S. District Court

10  Judge Chen, to 1 day of prison time and 36 months of supervised release (*See* U.S. District Court Case

11  Number CR-20-00053-001 EMC).

12      On May 31, 2024, San Francisco Police Department (SFPD) Officers O'Keefe, Richardson,

13  Custodio, Battle, and Zandanel and Sergeant Guererro were operating as an arrest team conducting a

14  narcotics "buy/bust" operation in the area of Ellis and Hyde Streets in San Francisco, in the Northern

15  District of California. Ellis and Hyde Streets, as well as other areas in the Tenderloin, are known to

16  SFPD and Federal law enforcement to be an area where narcotics are commonly sold and used.

17      At approximately 1:20 a.m., Officer Zandanel, operating as the undercover "buyer" in the vicinity

18  of Ellis Street and Hyde Street, observed an approximately thirty-year old Hispanic male, later identified

19  as the defendant, Keybin Eloy Rodriguez, standing next to a parked car on the south sidewalk of the 500

20  block of Ellis Street. Rodriguez caught Officer Zandanel's attention because he lowered and raised his

21  head slightly and appeared to make eye contact with Officer Zandanel.  An experienced narcotics officer

22  who has participated in multiple "buy/bust" operations, Officer Zandanel recognized Rodriguez's

23  movement and behavior as a signal commonly employed by narcotics dealers to signal to potential buyers

24  that they are selling narcotics.

25      Officer Zandanel, also a certified Spanish interpreter for the SFPD, approached Rodriguez and

26  asked him, in Spanish, whether he had any "cristal" – street terminology for methamphetamine.

27  Rodriguez replied asking "cuanto?" – meaning "how much?" in Spanish. Rodriguez, agreeing to sell $20

28

4

worth of methamphetamine to Officer Zandanel, retrieved from his jacket pocket an orange medicine bottle containing a crystal-like substance, which Officer Zandanel suspected to be methamphetamine. Rodriguez handed the suspected methamphetamine to Officer Zandanel, who then handed Rodriguez one marked $20 bill of Marked City Funds. As he walked away from the transaction, Officer Zandanel gave the pre-arranged "buy signal" notifying Sergeant Guerrero of a completed drug sale.

Sergeant Guerrero observed Rodriguez walking into the liquor store located at 565-B Ellis Street, just behind where the transaction had occurred. Sergeant Guerrero broadcast over radio for the arrest teams to move in on the liquor store to place the male matching Rodriguez's description under arrest.

After Rodriguez was placed under arrest, SFPD officers conducted a search of Rodriguez's person incident to arrest and discovered:

- 19.2 grams of methamphetamine;
- 17.5 grams of cocaine base;
- 3.8 grams of amphetamine;
- U.S. Currency totaling $262.00;
- $20 in Marked City Funds; and
- An operable digital weigh scale.

Rodriguez admitted in his plea agreement that he possessed the 19.2 grams gross of methamphetamine (which the parties stipulated would equal 18.2 grams *net* weight for the purposes of the Plea Agreement), 17.5 grams of cocaine base, and 3.6 grams of amphetamine with the intent to sell them. Rodriguez further admitted that the $262.00 of U.S. currency seized from his person were drug sale proceeds, and the operable digital scale was used for weighing the controlled substances.

After his arrest, the defendant agreed to remain in custody during the pendency of the case. Rodriguez was arraigned on a complaint and shortly thereafter agreed to be charged by information instead of indictment.  Rodriguez quickly agreed to enter into a plea agreement.  In this plea agreement, Rodriguez acknowledged that he knew the substances he possessed were methamphetamine, cocaine base, and amphetamine and that he possessed these substances intending to sell them to other individuals.  Rodriguez admits to possessing methamphetamine with the intent to distribute it in

violation of 21 U.S.C. § 841(a)(1), (b)(1)(C) and acknowledges that he understands a conviction in this case "makes it practically inevitable and a virtual certainty that [he] will be removed or deported from the United States, denied United States citizenship, and denied admission to the United States in the future." Plea Agreement, ¶ 1.

**2.     The need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment; to afford adequate deterrence to criminal conduct; and to protect the public from further crimes of the defendant**

The Tenderloin is suffering a crisis. Methamphetamine, an extremely potent and inexpensive synthetic substance, is sold openly and frequently in the Tenderloin. Its effects are grim, ravaging the lives of numerous residents, including those who are addicts and the most vulnerable. A tidal wave of tragic overdose deaths hit San Francisco, a large percentage caused by the deadly nature of methamphetamine and fentanyl, occurred in the Tenderloin where a drug market for both drugs openly exists. Overdose deaths in San Francisco alone totaled 810 in 2023, breaking an earlier record, with 19% of those occurring in the Tenderloin and approximately 51% of all overdoses involving methamphetamine.[3] By these numbers, methamphetamine played a role in more than 80 overdose deaths on our Tenderloin streets in 2023, and in hundreds more elsewhere. In fact, as of July 15, 2024, the overdose deaths in San Francisco have totaled 374, 175 of which were caused in part by methamphetamine.[4] The tragedy plays out in part because methamphetamine is cheap, readily accessible for purchase from dealers, and potentially fatal in small doses. Rodriguez possessed 19.2 gross grams of methamphetamine (stipulated to 18.2 net grams), an amount that could equate to multiple lethal doses.

Including relevant conduct, the Guidelines range for the defendant's crime is 12-18 months. The proposed sentence of time-served plus one day, with a three-year term of supervised release and a geographic condition restricting the defendant from returning to the Tenderloin, is a downward variance

---

[3] *See* OFFICE OF THE CHIEF MEDICAL EXAMINER, CITY AND COUNTY OF SAN FRANCISCO, REPORT ON 2023 ACCIDENTAL OVERDOSE DEATHS (Apr. 11, 2024), https://www.sf.gov/sites/default/files/2024-04/2023_OCME%20Overdose%20Report.pdf.

[4] OFFICE OF THE CHIEF MEDICAL EXAMINER, CITY AND COUNTY OF SAN FRANCISCO, REPORT ON 2024 ACCIDENTAL OVERDOSE DEATHS (Jul. 15, 2024), https://www.sf.gov/sites/default/files/2024-07/2024%2007_OCME%20Overdose%20Report.pdf.

U.S. SENTENCING MEMO RE: KEYBIN RODRIGUEZ
3:24-CR-00423 SI

1   from the Guidelines range.  The government submits this variance is appropriate given the defendant's

2   singular prior conviction.

3           In order for the defendant to receive this plea offer, the defendant waived detention and has been

4   in continuous custody since arrest; the government offered the defendant a time-served sentence in

5   exchange for the defendant's agreement to promptly plead guilty and proceed to sentencing (including

6   waiving indictment) within weeks of arrest; the defendant also agreed to be subject to a three-year term

7   of supervised release that includes a strict stay-away condition from the Tenderloin.  The defendant is on

8   notice that a return to the Tenderloin (in violation of the defendant's supervised release terms) will invite

9   new charges or supervised release violations.

10          This disposition results in a drug trafficking conviction within weeks of arrest (not months or

11  years), immediate separation of the defendant from the Tenderloin, and prevention of the defendant from

12  returning to the Tenderloin.  The speed at which this case moved will free up other government

13  resources to prosecute additional federal crimes, including in the Tenderloin.

14          **B.      The necessity of the proposed supervised release special conditions**

15          A three-year term of supervised release is required by statute for the drug-trafficking offense to

16  which the defendant has agreed to plead guilty, 21 U.S.C. § 841(b)(1)(C), and it is essential to this

17  disposition.  In particular, the special stay-away condition of release allows the government to

18  accomplish one of its primary goals related to protection of the public: to immediately separate drug

19  traffickers from the Tenderloin (given the defendant has remained in custody from the time of arrest)

20  and to effect a strict stay-away from the Tenderloin for three years.  Under the terms of supervised

21  release as contemplated herein, not only will the defendant be prohibited from engaging in any further

22  unlawful conduct, but the defendant will be prohibited from entering the Tenderloin without prior

23  approval by U.S. Probation:

24              Unless authorized by U.S. Probation, the defendant shall neither enter nor be present in
            the area in San Francisco bordered on the west by Van Ness Avenue, on the north by
25          Geary Street, on the east by Powell Street and 3rd Street, and on the south by Howard
            Street.
26

27  Combined with a suspicionless search condition, to which the parties have also agreed, Section

28

7

U.S. SENTENCING MEMO RE: KEYBIN RODRIGUEZ
3:24-CR-00423 SI

1    3553(a)'s goals of protection of the public and meaningful deterrence will be significantly advanced by

2    the terms of this agreement, and this prosecution's impact on illicit drug trafficking in the Tenderloin

3    will be both immediate and sustained.  The stay-away condition is also necessary given the particular

4    circumstances of Tenderloin drug trafficking, where the Court has repeatedly encountered recidivism

5    from previously sentenced defendants, including those who have been removed from the country but

6    who nonetheless returned to sell controlled substances in the Tenderloin.  *See, e.g.*, *United States v. Luis*

7    *Almicar Erazo-Centeno*, 3:23-cr-00002-CRB; *United States v. Gamez-Arguilio*, 3:17-CR-00553-CRB.

8           On the facts of this particular case, under the § 3553(a) factors and given the provisions of the

9    Plea Agreement, the government respectfully submits that the contemplated disposition here is sufficient

10   but not greater than necessary to accomplish the goals of § 3553(a).

11                                    **V.     CONCLUSION**

12          For these reasons, the government recommends that the Court sentence the defendant to a

13   sentence of time served plus one day, to be followed by a term of supervised release of three years and

14   the special conditions agreed to by the parties in the Plea Agreement, including the stay-away condition.

15

16   DATED:  August 9, 2024                          Respectfully Submitted,

17

18                                                   ISMAIL J. RAMSEY
                                                     United States Attorney
19

20                                                   _____/s/_____

21                                                   DONOVAN MIGUEL MCKENDRICK
                                                     Special Assistant United States Attorney
22

23

24

25

26

27

28

8

U.S. SENTENCING MEMO RE: KEYBIN RODRIGUEZ
3:24-CR-00423 SI